UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

BONNIE SMITH, et al.

      Plaintiffs,

v.                                    CASE NO.: 2:22-cv-2201-JPM-TMP

SEDGWICK CLAIMS MANAGEMENT
SERVICES INC., a Tennessee for Profit
Corporation,

      Defendant.

_____/

## JOINT MOTION TO APPROVE SETTTLEMENT AGREEMENTS

Plaintiffs, BONNIE SMITH, JOYLEALIA WARTIAN, APRIL PHELPS, BRITTANY SAPP, and TIMIKA KILLINGS ("Plaintiffs"), and SEDGWICK CLAIMS MANAGEMENT SERVICES INC. ("Defendant" or "Sedgwick") (collectively, Plaintiffs and Defendant may be referred to as the "Parties") jointly submit this Motion to Approve Settlement Agreements.

Following litigation and subsequent negotiations, Plaintiffs and Sedgwick reached settlements in this multi-Plaintiff action. The Parties now respectfully request that the Court enter an Order approving the agreed-upon resolutions reached between the different Plaintiffs and Sedgwick of Plaintiffs' Fair Labor Standards Act ("FLSA") claims[1]. As detailed below, the Court should grant the Parties' Motion because these settlements are fair, adequate, and reasonable resolutions of the Parties' bona fide disputes as to liability and alleged damages under the FLSA.

---

[1] The Plaintiffs are also releasing related overtime claims under Florida and Michigan state laws. However, since approval of the state law claims is not required, this Motion mentions only the FLSA claims throughout.

**BRIEF IN SUPPORT OF JOINT MOTION**

**I.　Background and Procedural History**

On March 31, 2022, Plaintiffs filed this action alleging unpaid overtime pursuant to the Fair Labor Standards Act ("FLSA"). (Doc. 1). Specifically, Plaintiffs alleged that they processed disability claims as Disability Representatives, were paid hourly (non-exempt), frequently worked in excess of forty (40) hours per workweek and Sedgwick failed to pay them overtime wages. This Complaint was filed as a Hybrid Rule 23 Class and FLSA Collective Action.

On September 6, 2022, Plaintiffs filed an Amended Complaint to add in opt-in April Phelps as a Named Plaintiff for her breach of contract claim. (Doc. 35).

On December 2, 2022, Plaintiffs filed a Second Amended Complaint which removed the Rule 23 Class and FLSA Collective Action allegations, added two (2) Plaintiffs and converted the action to a multi-Plaintiff case. (Doc. 43).

On December 13, 2022, Sedgwick filed an Answer to Plaintiffs' Second Amended Complaint. (Doc. 44). Sedgwick denied the claims and allegations asserted in the Second Amended Complaint and denied that it had violated the FLSA. Additionally, Sedgwick asserted several affirmative defenses.

The current Plaintiffs in this action are Bonnie Smith, Timika Killings, April Phelps, Brittany Sapp, and Joylealia Wartian who each worked as non-exempt Disability Representatives during their employment with Sedgwick.

The Parties engaged in thorough discovery consisting of written discovery and production of documents. In total, Sedgwick produced nearly 6000 documents (with a page count that greatly exceeds that number since all excel and power point documents were produced in native form and were each assigned a single bates number). The production included Plaintiffs' timekeeping

records, wage statements, W2s, and log on and log off activity from the various systems that Plaintiffs utilized to perform their job duties. Additionally, the production included documents related to Sedgwick's timekeeping policies, practices and training materials. Moreover, Sedgwick secured a third-party e-discovery vendor to collect emails and instant messages for 40 custodians dating back to January 1, 2018, applied twelve different search queries targeted to identify documents related to Plaintiffs claims and produced all relevant responsive documents.

Utilizing all available records indicating Plaintiffs' time worked, the Parties then created their own data analysis of the log on and off records reflecting time worked by Plaintiffs and began engaging in negotiations. Sedgwick and Plaintiffs have successfully come to agreements and now seek approval of their FLSA settlements from the Court. Two Plaintiffs, Phelps and Killings, are also parties to a separate lawsuit against Sedgwick based upon a different position than the one at issue herein. As such, their specific settlement agreements include carve out language for these claims.

On March 17, 2023, Plaintiffs filed a Notice of Settlement, and advised the Court the Parties would file their motion for approval within two (2) weeks. (Doc. 47).

The Parties believe the settlements reached represent fair and reasonable compromises given the disputed matters at issue and the risks of continuing forward with litigation and trial. The Parties have determined that a resolution in this case at this juncture outweighs the risks and costs in going forward with the litigation.

Each Plaintiffs' recovery was negotiated on an individual basis in this multi-Plaintiff case. The calculations for each respective Plaintiff were based upon each Plaintiffs' hourly pay rate, time worked, weeks at issue and data retrieved from Sedgwick's computer systems showing work activity.

**II.     Overview of Settlement Terms**

A copy of the agreed upon Settlement Agreements between Plaintiffs and Sedgwick are attached as Composite **Exhibit "A."** Subject to this Court's approval, the parties have agreed to resolve this FLSA dispute with the following amount paid to each Plaintiff:

| Plaintiff | Amount to Plaintiff |
|---|---|
| Bonnie Smith | $5,750.00 |
| Joylealia Wartian | $2,250.00 |
| Timika Killings | $20,000.00 |
| Brittany Sapp | $4,750.00 |
| April Phelps | $1,500.00 |

The amounts are specific to each Plaintiff and based upon that Plaintiff's weeks at issue, pay rate, and time reflected on Defendant's log on and off records. Given this is a multi-Plaintiff case, Plaintiffs' counsel engaged in separate negotiations for each Plaintiff, and each Plaintiff signed their own settlement agreement, all of which are attached for this Court's review.

In exchange for all payments made under the terms of the Settlement Agreements and Release of the FLSA and wage claims brought in this action, Plaintiffs agree to release Sedgwick from their specific claims brought in this action under the FLSA. With respect to two (2) Plaintiffs (Killings and Phelps), there are carve out provisions in their Settlement Agreements as they are opt-in Plaintiffs in another litigation against Sedgwick relating to a different position they held while employed at Sedgwick.

Plaintiffs' attorneys' fees and costs billed in this action were over $75,000.00 at the time a settlement was reached; however, the Parties negotiated and agreed upon the amount of $25,000.00 for the payment of Plaintiffs' attorneys' fees and costs in this action. The recovery of fees did not adversely affect any of the Plaintiffs' recoveries, was negotiated separately from the Plaintiffs'

recoveries and Plaintiffs' counsel reduced their fee to effectuate a settlement for their clients. The $25,000, was divided amongst the five (5) Plaintiffs, as reflected in each Settlement Agreement showing $5,000 in fees and costs for each respective Plaintiff.

## MEMORANDUM OF LAW

### I.   Standard of Review.

District courts in the Sixth Circuit, including this Court, require judicial approval for settlement of FLSA claims. *See*, *e.g.*, *Smolinski v. Ruben & Michelle Enterprs. Inc.*, No. 16-cv-13612, 2017 WL 1536437, at *1–2 (E.D. Mich. Apr. 27, 2017); *Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *2 (S.D. Ohio Dec. 2, 2016); *Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016). In reviewing a proposed FLSA settlement, "a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, 2012 U.S. Dist. LEXIS 181808, *4 (E.D. Tenn. Dec. 26, 2012), *quoting Lynn's Foods Stores*, 679 F. 2d at 1355.

Courts should consider the following factors in determining whether a settlement is fair and reasonable:

> (1) the existence of fraud or collusion behind the settlement:
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits:
> (5) the range of possible recovery; and
> (6) the opinions of the counsel.

*Thompson v. Deviney Constr. Co.,* 2017 U.S. Dist. LEXIS 231781, * 3-4 (W.D. Tenn. December 15, 2017), *citing Dees v. Hydradry, Inc*., 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).

5

**II. The Settlement is a Fair and Reasonable Resolution of Bona Fide Disputed Claims**

There is no question that the proposed settlements are the product of contested litigation. Plaintiffs pled detailed factual allegations describing what they perceived as unpaid overtime wages. Sedgwick denied Plaintiffs' factual allegations, and asserted an array of affirmative defenses it argued would bar Plaintiffs' claims in whole or in part.

Prior to the settlement, but after engaging in extensive discovery and exchanging thousands of pages of documents, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue. In this regard, Plaintiffs took the position that as hourly employees Plaintiffs worked more hours than they were paid for. Defendant took the position that Plaintiffs were properly compensated for all hours worked which Plaintiffs reported and that it had policies and procedures in place which: mandated that Plaintiffs accurately record all time worked; prohibited off the clock work; required that Plaintiffs record and report their own time; and it had a reasonable process for an employee to report uncompensated work time. Defendant took the further position that to the extent if any that Plaintiffs worked hours that they did not report and therefore were not compensated, Defendants had no actual or constructive knowledge of such time.

Once both sides believed adequate discovery had been exchanged such that they could engage in meaningful settlement discussions, the Parties began negations. Intense settlement discussions took place over several weeks before reaching an agreement on the amount to be paid (separately negotiating the amount for each Plaintiff and counsel). After reaching an agreement on the dollar figures to be paid, the parties further negotiated the terms of the written agreements. This settlement undoubtedly resolves bona fide disputed claims.

A. There is No Risk of Fraud or Collusion

Another factor for the Court to consider is whether there has been fraud or collusion. Courts may presume that no fraud or collusion exists where there is no evidence to the contrary. *O'Bryant v. ABC Phones of N. Carolina Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *14 (W.D. Tenn. Dec. 22, 2020)

Here, there was no fraud or collusion and there is no evidence of such behavior. Each party was independently represented by counsel. Plaintiffs were represented by Lytle & Barszcz, P.A., and Defendant was represented by Wilson, Turner & Kosmo, LLP and Ogletree, Deakins, Nash, Smoak & Stewart, P.C. Each attorney has extensive experience in litigating claims under the Fair Labor Standards Act, including claims for unpaid overtime compensation. Each counsel was obligated to and did vigorously represent their respective clients' interests.

These facts illustrate the lack of fraud or collusion. Thus, this factor weighs in favor of fairness of the settlement.

B. The Complexity, Expense and Likely Duration of the Case

Plaintiffs originally filed this lawsuit in Florida in June 2021, re-filed the instant case in March 2022 in this District and the parties ultimately reached a settlement in November 2022. The November 2022 settlement was thereafter memorialized in the written settlement agreements that were signed in February 2023.

Various issues are unsettled; at a minimum, the issues a judge or jury would need to decide include: 1) whether Plaintiffs worked any hours for which they were not compensated; 2) whether Defendant had any actual or constructive knowledge of time that Plaintiffs worked for which they were not paid; 3) whether Defendant's had a reasonable process for employees to report uncompensated time; 4) whether Defendant's policies and practices required that Plaintiffs

7

accurately report all time worked; 5) whether Plaintiffs are entitled to liquidated damages; and 6) whether a 2-year or 3-year statute of limitations applies to Plaintiff's claims; and 7) if liability were established, a finding would need to be made on the number of hours worked by Plaintiffs.

Although the parties engaged in extensive discovery, more discovery would need to be completed to prepare dispositive motions and trial. The parties would have expended significant time and resources which includes but is not limited to depositions, dispositive motion practice and preparation for trial. Therefore, the complexity, expense, and length of continued litigation weighs in favor of this settlement. *See, e.g. O'Bryant v. ABC Phones*, 2020 WL 7634780, at *14 (in analyzing fairness of an off the clock overtime claim, noting that claims requiring substantial discovery were a factor weighing in favor of the fairness of the settlement).

C. The Parties Engaged in Adequate Discovery

The Parties have conducted enough discovery in this matter to enable the Parties to assess the respective strengths and weaknesses of their cases, determine potential scope of damages and consider the pros and cons of settlement. As stated above, Sedgwick produced nearly 6,000 documents consisting of Plaintiffs' timekeeping records, wage statements, W-2s, and log on and log off activity as well as Sedgwick's timekeeping policies, practices, and training materials. Moreover, Sedgwick collected, searched, and produced relevant emails and instant messages for forty (40) custodians whose records dated back to January 1, 2018. The timekeeping and log on log off activities served as the basis for calculating potential damages and each side separately conducted their own analysis of the data.

After analyzing all discovery exchanged in the discovery phase, the parties reasonably believed they had exchanged sufficient discovery such that they were able to engage in settlement discussions. Indeed, the information obtained through this discovery informed the Parties of the

facts regarding this action and was helpful to the Parties in successfully conducting settlement discussions and ultimately led the Parties to reach a fair and reasonable resolution of this matter.

    D. <u>The Likelihood of Success on the Merits</u>

Plaintiffs' likelihood of success on the merits is uncertain. Defendant maintains that Plaintiffs were required to maintain accurate time records accounting for all time worked and that they were properly compensated for all hours worked which Plaintiffs reported. Defendant also contends that it had policies and procedures in place which prohibited off-the-clock work and provided a reasonable mechanism for reporting uncompensated work time. Defendant claims that to the extent if any that Plaintiffs worked off the clock, Defendants had no actual or constructive knowledge of such time. Moreover, Defendant takes the position that even if Plaintiffs were able to establish liability (which Defendant vehemently disputes), Plaintiffs would not be able to demonstrate that Defendants' actions were willful and Defendant would be able to affirmatively establish that it acted in good faith; thus, the statute would be limited to 2-years and no liquidated damages would be awarded.

Plaintiffs disagree with Defendants and believe they would be able to establish that Plaintiffs performed work for which they were not compensated, that Defendants knew or should have known that they were working and not being paid, and that its actions were willful. However, if the Court were to find in Defendant's favor, Plaintiffs would not obtain any recovery[2].

The proposed settlements will provide reasonable compensation to Plaintiffs and eliminate the inherent risks both sides may bear if this complex litigation continued to resolution on the merits, and substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation. *Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing policy of

---

[2] This section also speaks to the "range of possible recovery" and the Parties submit that the potential for zero recovery versus certainty of fair and reasonable settlements now weigh in favor of settlement.

encouraging settlement of FLSA litigation). There can be no doubt that substantial time and money, both for this Court as well as the Parties, has been conserved in fairly settling now as opposed to continuing litigation, especially in light of the fact that the settlements were reached while still in the discovery phase.

As outlined above, the Parties adamantly disagree about the merits of Plaintiffs' claims and the viability of the various defenses. Continuing litigation would have been extremely time-consuming and costly for both sides. Consequently, the settlements provide a certain result and value now, as opposed to a speculative result that may occur years from now. These substantial benefits weigh heavily in favor of the Court's approval of the Parties' settlements.

E.  Opinions of Counsel

It is appropriate for the court to consider the opinion of the experienced trial counselors who have evaluated the strengths of the case. *See Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000) (internal citations and quotation marks omitted) ("When considering a proposed settlement, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs'"). Counsel for both Parties possess extensive experience litigating FLSA collective actions and hold the opinion that settlement is in the best interest of all Parties involved, including the Opt-In Plaintiffs. Additionally, Plaintiffs opine that settlement is in their best interests.  Thus, this factor weighs in favor of approval of this settlement.

**III. Attorney Fees and Costs Are Appropriate**

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorneys' fees. See e.g. *Helms v. Central Fla. Reg. Hosp.*, 2006 U.S. Dist. LEXIS 92994, at *6-7 (M.D. Fla. Dec. 21, 2006).  However, when it is not a common fund case and the attorneys' fees were negotiated separately, the court is not required to review the

attorneys' fees for reasonableness. *Bernardez v. Firstsource Sols. USA, LLC*, 2022 U.S. Dist. LEXIS 71531 (W.D. Kentucky April 19, 2022). Despite the opinion in Bernardez, which says the court does not have to review the attorneys' fees for reasonableness, the Parties submit to this Court that the attorneys' fees are reasonable and were negotiated separately from Plaintiffs' recoveries and without adversely affecting Plaintiffs' recoveries. In this regard, Plaintiffs' counsel dedicated considerable time pursuing this litigation and engaging in the discovery process, and then negotiating this case for a successful resolution for each of their clients.

Plaintiffs' counsel billed over $75,000.00 in attorneys' fees at the time a settlement was reached in this case. This amount billed does not include all the additional time billed since the settlement was reached, including time for preparing the settlement agreements and the instant motion to approve. However, Plaintiffs' counsel reduced their fee to effectuate a settlement in this case. Sedgwick agreed to pay Plaintiffs' counsel $25,000.00 total for attorney's fees, litigation expenses, and costs. A total fee of $25,000 in this multi-plaintiff action when Plaintiffs' counsel billed over $75,000, is more than reasonable. Moreover, even though pursuant to some of the settlement agreements, Plaintiffs' counsel's fee is more than an individual Plaintiff's recovery, it is only because fees were divided pro rata amongst the five (5) Plaintiffs in this action. *See Williams v. Bevill*, 2016 U.S. Dist. LEXIS 25002 (E.D. Tenn. February 8, 2016) (even if the attorneys recovered more than an employee, it is not unreasonable).

### IV. Conclusion.

The parties respectfully request that, upon a finding that the Settlement Agreements are fair, this Court issue an Order granting the instant motion and dismissing the case with prejudice.

Respectfully submitted this 31st day of March 2023.

| | |
|---|---|
| /s/ *David V. Barszcz* | /s/ *Robin A. Wofford* |
| Mary E. Lytle, Esq. | Robin A. Wofford, Esq. (*pro hac vice*) |

| | |
|---|---|
| David V. Barszcz, Esq.<br>Lytle & Barszcz, P.A.<br>533 Versailles Drive, 2nd FL.<br>Maitland, FL 32751<br>(407) 622-6544 phone<br>(407) 622-6545 fax<br>E-mail:  mlytle@lblaw.attorney<br>E-mail:  dbarszcz@lblaw.attorney<br><br>***Attorneys for Plaintiffs*** | California Bar No. 137919<br>Lois M. Kosch, Esq. (*pro hac vice*)<br>California Bar No. 131859<br>Leticia C. Butler, Esq. (*pro hac vice*)<br>California Bar No. 253345<br>WILSON TURNER KOSMO LLP<br>402 West Broadway, Suite 1600<br>San Diego California 92101<br>Tel: (619) 236-9600<br>Fax: (619) 236-9669<br>E-mail: rwofford@wilsonturnerkosmo.com<br>E-mail: lkosch@wilsonturnerkosmo.com<br>E-mail: lbutler@wilsonturnerkosmo.com<br><br>s/ *Thomas L. Henderson*<br>Thomas L. Henderson, Esq.<br>Tennessee Bar No. 011526<br>OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.<br>6410 Poplar Avenue, Suite 300<br>Memphis, TN 38119<br>Tel: (901) 767-6160<br>Fax: (901) 767-7411<br>E-mail: Thomas.henderson@ogletreedeakins.com<br><br>***Attorneys for Sedgwick*** |